[Cite as *James v. Hoffman*, 2018-Ohio-2422.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| LARRY C. JAMES, et al. | : | |
| | : | |
| *Plaintiffs-Appellants* | : | Appellate Case No. 27735 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-839 |
| | : | |
| DAVID HOFFMAN, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendants-Appellees* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of June, 2018.

. . . . . . . . . .

JAMES E. ARNOLD, Atty. Reg. No. 0037712 and GERHARDT A. GOSNELL, II, Atty. Reg. No. 0064919, 115 West Main Street, 4th Floor, Columbus, Ohio 43215, Attorneys for Plaintiffs-Appellants; and BONNY J. FORREST, *pro hac vice*, 555 Front Street, Suite 1403, San Diego, California 92101, Attorney for Plaintiffs-Appellants Larry C. James, L. Morgan Banks, III, Debra L. Dunivin, and Russell Newman; and LOUIS J. FREEH, *pro hac vice*, 2550 M Street NW, 2nd Floor, Washington, DC 20037, Attorney for Plaintiff-Appellant Stephen Behnke

J. STEVEN JUSTICE, Atty. Reg. No. 0063719 and GLEN R. McMURRY, Atty. Reg. No. 0082600, 210 West Main Street, Troy, Ohio 45373, and BARBARA S. WAHL, *pro hac vice*, and KAREN E. CARR, *pro hac vice*, 1717 K Street, NW, Washington, DC 20006, Attorneys for Defendant-Appellee American Psychological Association

D. JEFFREY IRELAND, Atty. Reg. No. 0010443, ERIN E. RHINEHART, Atty. Reg. No. 0078298, and CHRISTOPHER C. HOLLON, Atty. Reg. No. 0086480, 110 North Main Street, Suite 1600, Dayton, Ohio 45402, and THOMAS G. HENTOFF, *pro hac vice*, and

JOHN K. VILLA, *pro hac vice*, 725 Twelfth Street, NW, Washington, DC 20005, Attorneys for Defendants-Appellees Sidley Austin LLP and David Hoffman

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Plaintiffs-appellants, L. Morgan Banks, III; Stephen Behnke; Debra L. Dunivin; Larry C. James; and Russell Newman, appeal from a pair of decisions issued by the trial court on August 25, 2017, in which the court determined that it lacked personal jurisdiction over Defendants-appellees, the American Psychological Association ("APA"), Sidley Austin LLP ("Sidley-Austin"), and Sidley-Austin partner David Hoffman. Appellants argue that the trial court erred because Appellees purposefully engaged in certain activities within this state, because the causes of action set forth in the complaint arose from Appellees' activities here, and because the trial court's exercise of personal jurisdiction over Appellees would be reasonable as a matter of practicality. We find that the trial court did not err, and therefore, we affirm the decisions.

## I. Facts and Procedural History

**{¶ 2}** In October 2014, the publication of the book *Pay Any Price: Greed, Power, and Endless War* prompted the APA to investigate allegations that it had collaborated with elements of the federal government to promote the use of abusive methods for conducting interrogations related to national security. Compl. ¶ 2-3; APA's Br. 4; Sidley-Austin's Br. 2. The APA chose the law firm of Sidley-Austin, with Hoffman as lead attorney, to perform the investigation, during the course of which the firm "reviewed more than 50,000 pages of documents" and interviewed 148 witnesses. Sidley-Austin's Br. 2. Two of the interviews took place in Ohio, and a total of six of the witnesses were residents of Ohio, including Appellant, Larry James. Appellants' Br. 5; Sidley-Austin's Br. 2.

James spoke with investigators in his office in Dayton.  Appellants' Br. 5; Sidley-Austin's Br. 4.

**{¶ 3}** Sidley-Austin submitted its final report (the "Report") to the APA in late June or early July 2015.  *See* Appellants' Br. 2. fn.1; APA's Br. 2; Sidley-Austin's Br. 1 fn.2; Mot. of Sidley-Austin and Hoffman to Dismiss under D.C. Code § 16-5502, Ex. 2A, Apr. 7, 2012 (revised version of the Report dated September 4, 2015).  A copy of the Report appeared on the website of *The New York Times* on July 10, 2015, and the APA posted a copy of the Report on its own website later that day.  APA's Br. 5; *see* Appellants' Br. 5.

**{¶ 4}** On February 16, 2017, Appellants filed their complaint against Appellees, asserting eleven claims for defamation and one claim for false light invasion of privacy. *See* Compl. ¶ 303-304, 325-326, 346-347, 367-368, 388-389, 408-409, 427-428, 446-447, 464-465, 485-486, 515-516 and 524.  Appellees responded to the complaint by filing three motions to dismiss on April 7, 2017:  the APA filed a single motion to dismiss based alternatively on Civ.R. 12(B)(2), the doctrine of forum non conveniens, and D.C. Code § 16-5502 (2012), whereas Sidley-Austin and Hoffman filed two motions, one pursuant to the rule and the doctrine of forum non conveniens, and the other pursuant to the District of Columbia Code.[1]

**{¶ 5}** Following a hearing, the trial court sustained Appellees' motions to dismiss in two decisions issued on August 25, 2017.  The court held, albeit implicitly, that although it theoretically could have exercised personal jurisdiction over Appellees under

---

[1] Section 16-5502 of the code is part of the District of Columbia's Anti-SLAPP Act of 2010; "SLAPP" is an acronym meaning "Strategic Lawsuits Against Public Participation." *Sherrod v. Breitbart*, 720 F.3d 932, 934 (D.C.Cir.2013).

R.C. 2307.382, such an exercise of jurisdiction would not be "consistent with the Due Process Clause of the Fourteenth Amendment." *See* Order Granting Mot. of APA to Dismiss 1, Aug. 25, 2017; Order Granting Mot. of Sidley-Austin and David Hoffman to Dismiss 1, Aug. 25, 2017. On September 22, 2017, Appellants timely filed their notice of appeal.

## II. <u>Analysis</u>

{¶ 6} Appellants argue that the trial court should have found that Appellees are subject to specific personal jurisdiction and overruled their motions to dismiss. Appellants' Br. 8-10; *see also Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 74, ¶ 46-47 (distinguishing between "general" and "specific" personal jurisdiction). Determining "whether an Ohio trial court has personal jurisdiction over a nonresident defendant [requires] a two-step analysis." *Kauffman Racing* at ¶ 28, citing *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183-184, 624 N.E.2d 1048 (1994). First, the court must determine "whether the long-arm statute [i.e., R.C. 2307.382] and the applicable rule of civil procedure [i.e., Civ.R. 4.3] confer jurisdiction." *Id.* Second, if the long-arm statute would confer jurisdiction, then the court must determine "whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." *Id.*

{¶ 7} When a challenge is raised, the "plaintiff [bears] the burden of establishing" that the trial court has personal jurisdiction over the defendant. *EnQuip Technologies Group, Inc. v. Tycon Technoglass, S.r.l.*, 2d Dist. Greene Nos. 2009 CA 42 & 2009 CA 47, 2010-Ohio-28, ¶ 57, citing *Ashton Park Apts., Ltd. v. Carlton-Naumann Constr., Inc.*,

6th Dist. Lucas No. L-08-1395, 2009-Ohio-6335, ¶ 12. The court, in reaching its decision, "must 'view [the] allegations in the pleadings and the documentary evidence in a light most favorable' to the plaintiff and resolv[e] all reasonable[,] competing inferences in [the plaintiff's] favor." *Kauffman Racing* at ¶ 27, quoting *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994). A ruling on personal jurisdiction "is a question of law that [an] appellate court[ ] review[s] de novo." *Id.*

### A.    Assignment of Error No. 1

{¶ 8} For their first assignment of error, Appellants argue that:

THE TRIAL COURT ERRED IN GRANTING THE MOTION OF DEFENDANT AMERICAN PSYCHOLOGICAL ASSOCIATION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

{¶ 9} Appellants contend that the trial court erred by finding that it could not exercise personal jurisdiction over the APA consistent with principles of due process. Appellants' Br. 8-10. According to Appellants, the APA subjected itself to the jurisdiction of Ohio courts by publishing the Report in Ohio; by publishing the Report even though it "knew that [statements in the Report] would cause injury in Ohio"; and by ratifying the acts of Sidley-Austin and Hoffman in preparing the Report, which included a handful of visits to the state and six interviews with Ohio residents. *See id.* at 12-18.

{¶ 10} The trial court did not discuss the application of R.C. 2307.382 in its decisions of August 25, 2017, and the parties likewise have not addressed the statute in their briefs to this court. R.C. 2307.382(A) authorizes an Ohio court to exercise personal jurisdiction over a nonresident who, among other things, "[t]ransact[s] any business" here or causes "tortious injury" to one or more persons within the state as the result of an act

committed elsewhere "with the purpose of injuring persons," so long as the act "might reasonably have [been] expected" to cause injury to a person in Ohio. *See also EnQuip Technologies Group*, 2d Dist. Greene Nos. 2009 CA 42 & 2009 CA 47, 2010-Ohio-28, ¶ 60. Although R.C. 2307.382(A) has been interpreted broadly, particularly on the basis of the phrase "[t]ransacting any business" in R.C. 2307.382(A)(1), its reach is not unlimited. *See, e.g., Kauffman Racing*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 74, ¶ 5-6 and 41-44; *EnQuip Technologies* at ¶ 60-62; *Ashton Park Apts.*, 6th Dist. Lucas No. L-08-1395, 2009-Ohio-6335, ¶ 3 and 14-18. The APA, however, has not formally challenged the trial court's implicit application of the statute.[2]

**{¶ 11}** Assuming, then, that R.C. 2307.382 nominally invested the trial court with personal jurisdiction over the APA, the second step of the jurisdictional inquiry requires an evaluation of whether the court's exercise of jurisdiction would have comported with Appellees' rights to due process. *Kauffman Racing* at ¶ 28. Due process "is satisfied if [a] defendant has 'minimum contacts' with the forum state such that the maintenance of [a] suit does not offend ' "traditional notions of fair play and substantial justice." ' " *Id.* at ¶ 45, quoting *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), internally quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). The requirement of "minimum contacts" is met by a defendant's "purposeful availment" of the "privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of [the state's] laws." *Hanson v. Denckla*, 357

---

[2] During the hearing on Appellees' motions to dismiss, Sidley-Austin and Hoffman informed the trial court that they were "not challeng[ing] jurisdiction under Ohio's long-arm statute." Tr. of Hr'g 9:1-9:5 and 11:11-11:23, Aug. 25, 2017. The APA stated that it "[did] not concede that there is long-arm jurisdiction," but in its instant brief, it offers no argument directed to the application of R.C. 2307.382. *Id.* at 27:21-28:2 and 38:3-38:12.

U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Kauffman Racing* at ¶ 45.

{¶ 12} Within this framework, personal jurisdiction "can be either general or specific, depending upon the nature of the [defendant's] contacts * * * with the forum state." (Citation omitted.) *Kauffman Racing* at ¶ 46. A nonresident who has "continuous and systematic contacts" with a given state is subject to general jurisdiction and may be sued even on causes of action unrelated to the nonresident's ongoing activity in the forum. *Kauffman Racing* at ¶ 46; *EnQuip Technologies* at ¶ 74. Specific jurisdiction, on the other hand, applies only when: (1) the nonresident defendant has purposefully taken advantage of the privilege of operating within the forum state; (2) the plaintiff's claims arise out of the defendant's activities in the forum state; and (3) the acts of the defendant, or the consequences caused thereby, have a substantial enough connection to the forum to make the exercise of jurisdiction over the defendant reasonable. *See Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968); *Kauffman Racing* at ¶ 51 and 70-71; *see also EnQuip Technologies*, 2010-Ohio-28, ¶ 75.

### 1. The APA did not purposefully avail itself of the benefits and protections of Ohio law.

{¶ 13} Appellants do not argue that the trial court has general jurisdiction over the APA. *See* Appellants' Br. 9-10. They argue instead that the court has specific jurisdiction because the APA's activities in Ohio satisfy the tripartite test articulated by the Sixth Circuit in *Southern Machine. See id.* With respect to the first part of the test, Appellants posit that the APA purposefully availed itself of the privilege of conducting its affairs in Ohio through its publication of the Report here "on multiple occasions"; by asking its members, some of whom were residents of Ohio, to cooperate with Sidley-Austin's

investigation; and through the service of two Ohioans on its board of directors. [3] Appellants' Br. 12, 14 and 18. Arguing that Sidley-Austin and Hoffman were the APA's agents, Appellants add that the APA vicariously availed itself of the privilege of operating in Ohio through the interviews of "a total of six Ohio residents during the preparation of the Report," two of which took place in the state. (Emphasis omitted.) *Id.* at 15.

### a. The publication of the Report did not constitute purposeful availment.

{¶ 14} Regarding publication, Appellants present the following list of occasions on which the APA, itself or through Sidley-Austin, published the Report: (1) on or about June 27, 2015, in an email announcement sent by Sidley-Austin notifying the APA's board of directors that the Report could be viewed on a secure website; (2) on July 10, 2015, in a social media announcement issued by the APA; (3) on July 10, 2015, on the APA's website; and (4) on September 4, 2015, also on the APA's website. Appellants' Br. 12-13. Appellants maintain that these publications demonstrate purposeful availment because the email announcement reached the two members of the APA's board of directors who lived in Ohio, because the social media announcement "reach[ed] approximately 1,392" Ohioans, and because the Report itself "became accessible to the world," including "the 1[,]500 members of [the] APA * * * in Ohio," after being posted on the APA's website. *Id.* Accepting for sake of analysis that Sidley-Austin's activities may be imputed to the APA on the basis of an agency relationship, we find that the APA did not "expressly aim[ ]" the Report at Ohio on any of these occasions. *See Calder v. Jones*,

---

[3] Appellant Russell Newman avers that the "2005 APA Board of Directors" and the "2015 Board of Directors * * * each had two members from Ohio." Affidavit of Russell Newman ¶ 17, May 6, 2017. The two members from Ohio in 2005 were apparently not on the board in 2015. Compl. ¶ 59; Newman Aff. ¶ 17 and Ex. J; Appellants' Br. 12-13.

465 U.S. 783, 789, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984).

{¶ 15} The APA hired Sidley-Austin to investigate allegations of collusion and to prepare a written report detailing the results of the investigation. Sidley-Austin, then, had affirmative obligations to perform the investigation, to prepare a written report, and to deliver that report to its client, the APA—a nonprofit corporation headquartered in Washington, D.C. and capable of acting "only through its employees, subsidiaries, or agents." *U1it4less, Inc. v. FedEx Corp.*, 871 F.3d 199, 205 (2d Cir.2017); Compl. ¶ 47. In 2015, the APA's board of directors had 13 members, of whom two were residents of Ohio and three were residents of Georgia, the latter being the state with the greatest representation on the board that year. *See* Affidavit of Russell Newman ¶ 17 and Ex. J, May 6, 2017; Sidley-Austin's Br. 3. The board is the "administrative agent" of the APA body with "sole authority to approve policy and [to] appropriate * * * revenue," the Council of Representatives. Compl. ¶ 47.

{¶ 16} With this context in mind, Sidley-Austin's email announcement of June 27, 2015, cannot fairly be characterized as purposeful availment of the privilege of transacting business in Ohio. The firm had no control over the whereabouts of the members of its client's board of directors, but it did have an obligation to deliver the Report to the APA. *See* Appellants' Br. 5; APA's Br. 5; Sidley-Austin's Br. 2. Thus, the locations of the members of the board were effectively coincidental with respect to Sidley-Austin's fulfillment of its obligations to the APA.

{¶ 17} By contrast, the social media announcement issued by the APA via Twitter on July 10, 2015, along with the posting of the Report on the APA's website, made the Report "accessible to the world," including a significant number of Ohio residents. *See*

Appellants' Br. 6-7; APA's Br. 5; Sidley-Austin's Br. 3-4. The significance, in Appellants' view, lies in the APA's knowledge that "defamatory statements [in the Report] would cause injury in Ohio," inasmuch as the "tort of libel is generally held to occur wherever the offending material is circulated." (Citation omitted.) *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *see* Appellants' Br. 12-14; Appellants' Reply to Sidley-Austin's Br. 3-4. Hence, because the APA knew the Report would cause harm in this state, Appellants argue that the fact publications of the Report reached at least some residents of Ohio establishes purposeful availment on the part of the APA.[4] *See* Appellants' Br. 12-14; Appellants' Reply to the APA's Br. 6-7; Appellants' Reply to Sidley-Austin's Br. 4. Under "these circumstances," say Appellants, the APA "should have reasonably anticipated being haled into court in Ohio." Appellants' Br. 15.

{¶ 18} To determine whether a nonresident defendant has "minimum contacts" with a forum, "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' " *Calder v. Jones*, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L.Ed.2d 804 (1984), quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The *Calder* case originated with a lawsuit in a California court against the president of the Florida-based *National Enquirer*, along with one of its reporters, brought by actor Shirley Jones in response to an allegedly libelous article. *Id.* at 784-785. Notwithstanding that the "article [had been] written and edited by [the

---

[4] Neither the email nor the Twitter announcement seems to have included a copy of the Report itself. *See* Affidavit of Barry Anton ¶ 4, May 2, 2017; Affidavit of William Strickland ¶ 4, Apr. 25, 2017; *see also* Affidavit of Stephen Behnke ¶ 14, May 5, 2017; Affidavit of Larry James ¶ 6, May 5, 2017; Newman Aff. ¶ 5 and Ex. C. Hence, we treat the announcements as publications of themselves strictly for our jurisdictional analysis and do not decide whether they would qualify as publications for purposes of the merits of a claim for defamation.

defendants] in Florida," the Court observed that the article "concerned the California activities of a California resident"; that the article "impugned the professionalism of an entertainer whose television career was centered in California"; that the article "was drawn from California sources" almost entirely; and that "the brunt of the harm, in terms of [Jones's] emotional distress and the injury to her professional reputation, was suffered in California." (Citations omitted.) *See id.* at 785 and 788-789. The Court concluded accordingly that the defendants' "actions were expressly aimed at California," which was "the focal point both of the story and the harm suffered," and held that the defendants were subject to personal jurisdiction in California as a result. (Emphasis added.) *Id.* at 789.

{¶ 19} In this case, the Report concerned the foreign and domestic activities of residents of several states (including the District of Columbia). *See* Report 2-4, 9-14, 16-18, 20, 31, 36-39, 42-53, 58-59, 62-63 and 143;[5] *see also* Appellants' Br. 5; Newman Aff. ¶ 14 and Ex. H; Sidley-Austin's Br. 2. For example, the executive summary prefacing the Report states that "key APA officials, principally the [former] APA Ethics Director[, Stephen Behnke,] joined and supported at times by other APA officials, colluded with important [United States Department of Defense] officials to have [the] APA [adopt] loose, high-level ethical guidelines" for national security-related interrogations. (Emphasis added.) *See* Report 9 and 12; Compl. ¶ 40. Appellant Stephen Behnke resides in Washington, D.C., and although he has engaged in professional collaborations "with the Ohio Psychological Association, the Ohio State Board of Psychology," the

---

[5] We refer to the copy of the revised version of the Report dated September 4, 2015, and attached as Exhibit "2A" to the motion to dismiss under D.C. Code § 16-5502 filed by Sidley-Austin and Hoffman on April 7, 2017.

Veterans Administration in Cleveland, and sundry "educational institutions" in the state, the record includes no evidence that these collaborations were anything other than routine incidents of his former position as the APA's Ethics Director. *See id.*

{¶ 20} Three of the four other appellants are also not Ohio residents and make no claim that their careers are "centered in" Ohio. *See Calder*, 465 U.S. at 788; Compl. ¶ 38-42; *see also* Report 532, 534 and 537. Appellant Russell Newman, a California resident, "began his career as a psychologist at Harding Hospital in Worthington, Ohio," but the record includes no evidence that he has had any other legally meaningful connection to the state in more than 20 years. Compl. ¶ 42; *see* Newman Aff. ¶ 12. Newman, who "was forced to resign his positions" at Alliant International University in San Diego, California, avers that he and his wife—Appellant, Debra L. Dunivin, who resides in California or Washington, D.C.—have had difficulty finding employment since the Report was published, though the complaint and Newman's affidavit suggest that their careers were centered in the District of Columbia in the past, and in California more recently.[6] *See* Compl. ¶ 41-42; Newman Aff. ¶ 6-7 and 12-13. Likewise, Appellant L. Morgan Banks, III, resides in North Carolina and has no obvious connection to Ohio. Compl. ¶ 39; Report 534. Of the five appellants, only Larry James has a career centered in this state. Compl. ¶ 38; *see* Affidavit of Larry James ¶ 2, 4 and 21, May 5, 2017.

{¶ 21} In *Calder*, while overtly declining to consider the lower court's position that the defendants' pre-publication "investigative activities" formed an "independent basis for

---

[6] Dunivin herself has not submitted an affidavit. The complaint alleges that she resides in Washington, D.C., but Newman avers that she lives in California. Compl. ¶ 42; Newman Aff. ¶ 13. The discrepancy might be explained by the fact that Newman executed his affidavit approximately three months after the filing of the complaint.

an assertion of [personal] jurisdiction," the Supreme Court noted, and then reiterated, that the author of the defamatory publication had "rel[ied] on [tele]phone calls to sources in California for the information contained in [his] article." *See Calder*, 465 U.S. at 783, 785, 787 fn.6 and 788. The repeated mention of the location of the author's sources implies that the Court assigned some importance to this fact, even if the Court did not decide that it should dictate the outcome of the case. Unlike the article at issue in *Calder*, however, the Report seems to have been drawn from sources in many locations, mostly outside of Ohio. *See* Report 6-7. Only six of 148 persons interviewed during Sidley-Austin's investigation were Ohioans; only two of "more than 200 interviews" were held in Ohio; and the "more than 50,000 pages of documents" reviewed for the Report appear to have had no distinct geographical origin.[7] *See* Appellants' Br. 5-6; Report 6-7; Sidley-Austin's Br. 2.

{¶ 22} The *Calder* opinion referred, as well, to the jurisdiction in which "the brunt of the harm" is suffered. *Calder*, 465 U.S. at 788-789. Appellants Banks, Behnke, Dunivin, and Newman live and work in other states (or the District of Columbia), and based on the Court's reasoning in *Calder*, the brunt of any "emotional distress [they experienced, or] injury to [their] professional reputation[s]," occurred not in Ohio, but in the jurisdictions where they reside or practice their professions. *See id.* at 789. Again,

---

[7] The parties have not elaborated on the origin or precise nature of the documents. In its brief, Sidley-Austin refers to "more than 50,000 pages of documents," whereas the Report refers to "over 50,000 documents." (Emphasis added.) Report 6; Sidley-Austin's Br. 2; *see also* Appellants' Br. 5-6. Sidley-Austin states in the Report that the "most important" items were found among "a very large volume of emails and other documents" stored on the "APA's computer systems." Report 6. Whatever the actual number of documents might be, the compilation represents a variety of individual and organizational sources. *Id.* at 6-7.

Appellant James is the sole exception, given that he lives and works in Ohio.

{¶ 23} Yet, even assuming that all of the appellants were harmed here to some extent, and discounting the importance of the locus of the "brunt of the harm," the relationship among Appellees, the State of Ohio, and Appellants' causes of action is no less tenuous. For instance, in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), a resident of New York sued Hustler Magazine, Inc., an Ohio corporation, for libel in federal district court in New Hampshire. On review of an opinion from the First Circuit Court of Appeals deciding that the district court could not properly exercise personal jurisdiction over Hustler, the Supreme Court reversed, declaring jurisdiction proper regardless of the fact that "only a small portion of [the allegedly offending issues of the magazine] were distributed in New Hampshire," because the limited circulation nonetheless represented a "continuous[ ] and deliberate[ ] exploit[ation] [of] the New Hampshire market." (Emphasis added.) *Id.* at 772, 775 and 781. The Court remarked, in reaching its conclusion, that although "the bulk of the harm done to [Keeton] occurred outside New Hampshire," presumably in Keeton's home state of New York, the same could be said "in almost every libel action brought somewhere other than the plaintiff's domicile." *See id.* at 780-781. Seeing "no justification for restricting libel actions to the plaintiff's home forum" on this basis, the Court held that "the victim of a libel, like the victim of any tort, may choose to bring suit" in any forum, so long as the defendant has minimum contacts with that forum. *Id.*

{¶ 24} Aside from the harm for which Appellants seek recovery, the Report has little substantive relationship to Ohio—it concerns the activities of residents of several states, discusses events that occurred elsewhere, and presents information drawn from

sources in a variety of places. *See* Report 9, 12-14, 16-18, 20, 36-39, 42-53, 58-59, 62-63, 532, 534 and 537; Compl. ¶ 38-42; Appellants' Br. 5; Sidley-Austin's Br. 2; James Aff. ¶ 2, 4 and 21; Newman Aff. ¶ 6-7 and 12-14 and Ex. H. That is, even if Ohio is a focal point of some of the harm allegedly caused by the Report's publication, Ohio is not the focus of the narrative set forth in the Report. *See Calder*, 465 U.S. at 789. In addition, the circumstances suggest "no reason to believe that [the APA] intended to establish 'continuing relationships and obligations' " in Ohio by commissioning or publishing the Report, meaning that the Report "represents nothing more than an isolated transaction," as opposed to one element in an ongoing series of contacts. *See Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir.1997).

{¶ 25} Moreover, regardless of the fact that the APA made the Report "available to the world," and thereby to the residents of Ohio, the mere foreseeability that the Report might cause Appellants harm in Ohio is insufficient, standing alone, to justify a finding that the APA purposefully availed itself of the privilege of operating in Ohio. Appellants' Br. 13; *see, e.g., Reynolds v. Internatl. Amateur Athletic Fedn.*, 23 F.3d 1110, 1120 (6th Cir.1994); *Oasis Corp. v. Judd*, 132 F.Supp.2d 612, 624 (S.D.Ohio 2001); *Kauffman Racing,* 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 74, ¶ 59-60, 63-65 and 67-68. The *Kauffman Racing* case involved a defamation lawsuit against a defendant from Virginia who entered into a business transaction with an Ohio corporation but "never physically entered" the state. *Kauffman Racing* at ¶ 1-3. Although the record established only that five or more Ohioans had actually seen the defendant's allegedly defamatory statements, the Ohio Supreme Court deemed the exercise of personal jurisdiction to be warranted because the defendant "<u>intended</u> the effects of his conduct to

be felt in Ohio," or in other words, because the defendant's conduct "went well beyond foreseeability." (Emphasis in original.) *Id.* at ¶ 41-42, 67 and 73. Comparing the facts to *Calder*, the Court noted that in both cases the allegedly defamatory statements related to the plaintiffs' activities within their respective home states; that the plaintiffs' reputations were centered in their home states; that the statements relied on information sourced from the plaintiffs' home states; and that the statements were thus focused on the plaintiffs' home states. *See id.* at ¶ 57-60.

{¶ 26} The record in the instant matter provides no such indications that the APA intended the brunt of any harm caused by the Report to be suffered in Ohio. *See Kauffman Racing* at ¶ 56, 59-60 and 67-68. Finding that Ohio was not "the focal point both of the story [set forth in the Report] and of the harm [allegedly] suffered" as a consequence of the Report's publication, we conclude that the APA did not purposefully avail itself of the privilege of conducting its affairs in Ohio by publishing the Report. (Emphasis added.) *See Calder*, 465 U.S. at 789.

b. **Neither the APA's request that its members cooperate with the preparation of the Report, nor the membership of Ohioans on the APA's board of directors, constitutes purposeful availment.**

{¶ 27} Appellants argue that the APA actively sought out the privilege of transacting business in Ohio by asking certain witnesses here to cooperate with Sidley-Austin's investigation. Appellants' Br. 5 and 17-18. They also argue that the APA had minimum contacts with Ohio by way of the membership of Ohioans on its board of directors. *See id.* at 18.

{¶ 28} Regarding the former argument, Appellants themselves assert that the "possible witnesses" in Ohio were in possession of information of particular relevance to

the investigation.   *See id.* at 5 and 18.   Nevertheless, the importance of the witnesses' information suggests that the APA asked the witnesses to cooperate with the investigation not because of where they resided, but because of what they knew.   *See id.*; *see also* Sidley-Austin's Br. 10-11 and 13.

{¶ 29} Regarding the latter argument, Appellants note that Ohio residents on the APA's board of directors "participated [by telephone and email] in [b]oard meetings and decisions" involving the Report.[8]   Appellants' Br. 18.   Yet, the fact that Ohio residents served on the board does not demonstrate that the APA sought to invoke the shield and sword of Ohio law any more than the fact that Georgia residents served on the board demonstrates that the APA sought to avail itself of the privilege of conducting its affairs in Georgia.   *See* Newman Aff. ¶ 17 and Ex. J, May 6, 2017; Sidley-Austin's Br. 3.

{¶ 30} We find that the APA did not purposefully avail itself of the protections of Ohio law by asking its Ohio membership to cooperate with Sidley-Austin's investigation. Similarly, we find that the APA did not have minimum contacts with Ohio simply because Ohio residents served on its board of directors.

c.    **The APA did not purposefully avail itself of the privilege of operating in Ohio as the result of the investigative activities undertaken by Sidley-Austin and Hoffman.**

{¶ 31} Appellants contend that because Sidley-Austin and Hoffman acted as the APA's agents, the APA should be held to have established minimum contacts with Ohio through the investigation performed by Sidley-Austin.   *See* Appellants' Br. 15-16. Specifically, Appellants posit that the investigation constituted purposeful availment on the basis of "interview[s] of a total of six Ohio residents," of which two "were [conducted]

---

[8]  *See supra* note 3.

in-person in Ohio." (Emphasis omitted.) *Id.* at 15. Characterizing three of the six interviews as conspicuously significant, Appellants add that the quality of these contacts, rather than the quantity, "determines whether purposeful availment" has occurred. *See id.*

{¶ 32} We find that the interviews of Ohio residents did not constitute purposeful availment, especially given that Ohio residents accounted for approximately 4 percent of the 148 witnesses interviewed by Sidley-Austin. Appellants' Br. 5-6; Report 6-7; Sidley-Austin's Br. 2. Notwithstanding the comparative significance of the information provided by these witnesses, the fact that they lived in Ohio is little more than happenstance. Furthermore, the alleged importance of the information suggests that Appellees would have sought out these witnesses irrespective of where they resided.

### 2. Appellants' claims do not arise from the APA's activities in Ohio.

{¶ 33} According to Appellants, because they have been defamed in Ohio as the result of the Report's publication, and because the Report itself was the product of the APA's pre-publication activities in Ohio, their claims for defamation arise from the APA's conduct of its affairs here, thereby satisfying the second part of the *Southern Machine* test. *See* Appellants' Br. 19. In *Southern Machine*, the Sixth Circuit Court of Appeals held that for a court in a given forum to have personal jurisdiction over a nonresident defendant, "three criteria" must be met, of which the second is the requirement that the plaintiff's "cause of action * * * arise from the defendant's activities" there. *Southern Machine,* 401 F.2d 374, 381 (6th Cir.1968); *see also Kauffman Racing*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 74, ¶ 70. A cause of action having a substantial connection to the defendant's activities in the forum satisfies this criterion, which should

be evaluated pursuant to a " 'lenient standard.' " *Kauffman Racing* at ¶ 70, quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir.2002).

**{¶ 34}** Because the "tort of libel is generally held to occur wherever the offending material is circulated," Appellants' claims have some connection to the publication of the Report. *See Keeton*, 465 U.S. 770, 777, 104 S.Ct. 1473, 79 L.Ed.2d 790; *Kauffman Racing* at ¶ 41, citing *Keeton*, 465 U.S. at 777. The brunt of the harm caused by the Report's allegedly defamatory content, however, occurred outside of Ohio, and the APA's pre-publication activities here were largely limited to a handful of visits, communications with its membership in the state, and the service of two Ohioans on its board of directors. In the absence of a more substantial connection among Appellants' claims and the APA's conduct in Ohio, we find that Appellants' claims did not arise from the APA's activities here.

### 3. **The APA's activity in Ohio and the harm allegedly caused by the publication of the Report do not have a substantial enough connection to this state for the exercise of personal jurisdiction over the APA to be reasonable.**

**{¶ 35}** Appellants argue that the exercise of personal jurisdiction in this case would be reasonable because litigating in Ohio would not be unduly burdensome for the APA, because Ohio has a legitimate interest in the outcome of the litigation, and because Appellants themselves have an "interest in repairing the damage to their reputations" in Ohio. Appellants' Br. 21. This argument relies on the inference that the third element of the *Southern Machine* test is satisfied when the first and second elements have been met. (Citations omitted.) *See Kauffman Racing* at ¶ 71; Appellants' Br. 20-21.

**{¶ 36}** We have found that Appellants have not satisfied the first and second elements of the *Southern Machine* test. Consequently, we need not consider the third

element of the test, particularly because our finding that the APA did not purposefully avail itself of the privilege of operating in Ohio "is dispositive." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1275 (6th Cir.1998).

{¶ 37} We find that the APA did not purposefully avail itself of the privilege of conducting its affairs within Ohio and that Appellants' causes of action do not arise from the APA's activities in this state. Therefore, we conclude that the APA is not subject to the personal jurisdiction of the trial court. Appellants' first assignment of error is overruled.

### B. Assignment of Error No. 2

{¶ 38} For their second assignment of error, Appellants argue that:

THE TRIAL COURT ERRED IN GRANTING THE MOTION OF DEFENDANTS SIDLEY AUSTIN LLP AND DAVID HOFFMAN TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

{¶ 39} Appellants raise two assignments of error, though they present the assignments in the form of a single argument. Appellants' Br. 8. Our foregoing determination that the APA is not subject to the personal jurisdiction of the trial court likewise obviates the need for a separate analysis with respect to Sidley-Austin and Hoffman, given that we assumed for sake of analysis that Sidley-Austin and Hoffman's conduct could be attributed to the APA on the basis of an agency relationship. *See also* Appellants' Br. 15-18; Appellants' Reply to Sidley-Austin's Br. 2-3. Appellants' second assignment of error is overruled.

### III. Conclusion

{¶ 40} We find that the trial court did not err by determining that it could not

exercise personal jurisdiction over Appellees consistent with the principles of due process. Therefore, Appellants' assignments of error are overruled, and the trial court's decisions of August 25, 2017, sustaining Appellees' motions to dismiss are affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies mailed to:

James E. Arnold
Gerhardt A. Gosnell, II
Bonny J. Forrest
J. Steven Justice
Glen R. McMurry
Barbara S. Wahl
Karen E. Carr
D. Jeffrey Ireland
Erin E. Rhinehart
Christopher C. Hollon
Thomas G. Hentoff
John K. Villa
Louis J. Freeh
Hon. Timothy N. O'Connell