## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2018-CA-00060-COA

**AQUASEAL RESURFACING LLC**                                        **APPELLANT**

**v.**

**JEFCOAT RECREATION AND
CONSTRUCTION INC. AND DOYLE JEFCOAT**                      **APPELLEES**

DATE OF JUDGMENT:              12/12/2017
TRIAL JUDGE:                  HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:     RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        SCOTT WELLS
ATTORNEYS FOR APPELLEES:       CATOUCHE JUDGE BODY
                              GLENN S. SWARTZFAGER
NATURE OF THE CASE:            CIVIL - OTHER
DISPOSITION:                  AFFIRMED - 03/26/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**McDONALD, J., FOR THE COURT:**

¶1.     AquaSeal Resurfacing LLC appeals the Rankin County Circuit Court's judgment

affirming the County Court of Rankin County's dismissal of the enrollment and enforcement

of an Ohio judgment rendered against a Mississippi corporation, Jefcoat Recreation and

Construction Inc., and resident, Doyle Jefcoat.  Finding no error in the circuit court's ruling,

we affirm.

### FACTS

¶2.     Jefcoat Recreation and Construction is a Mississippi corporation domiciled in Pearl,

Mississippi. Its Director and Vice President, Doyle Jefcoat, is a Mississippi resident.[1] AquaSeal is an Ohio limited liability company, domiciled in Louisville, Ohio. AquaSeal is one of only a few authorized distributers and installers of PolySoft water safety surfacing material in the United States.

¶3.    PolySoft introduced the parties to one another in May of 2012. However, they had no business dealings with each other until October 17, 2012. At that time, AquaSeal received an email from Jefcoat asking for price quotes for PolySoft that Jefcoat planned to use in the construction of a splash pad.[2] After several email exchanges, Jefcoat decided to purchase the product directly from the manufacturer and contracted with AquaSeal only to train Jefcoat employees in the installation of material. The negotiations and ultimate contract were accomplished through phone, email, and facsimile.

¶4.    The scant one-page contract contains the fees per trainer and states that payment is due upon receipt of the invoice. It contains no choice of forum for resolution of disputes nor does it identify what state's law would apply. Doyle signed the contract in Mississippi; AquaSeal signed in Ohio.

¶5.    Neither Doyle nor Jefcoat owns any property in Ohio. None of Jefcoat's employees, representatives, or directors live there. Jefcoat had no office in Ohio and it was not

---

[1] Unless specified otherwise, we refer to the appellees collectively as "Jefcoat."

[2] In his affidavit, Doyle says he did not recall which of the parties made the initial contact. However, the record contains an email from Jeff Martinson of Jefcoat Construction to AquaSeal soliciting quotes for the PolySoft product.

registered to do business there. Jefcoat had no prior or subsequent business dealings with AquaSeal or any other Ohio entity.

¶6.     AquaSeal's trainers made three trips to Biloxi to train Jefcoat employees. It sent three invoices for these sessions but Jefcoat paid only one. AquaSeal sued Jefcoat in Ohio for the unpaid invoices. Although served, Jefcoat did not answer, so AquaSeal obtained a default judgment for $34,017.43.[3]

¶7.     AquaSeal subsequently enrolled its judgment in the Rankin County court. Jefcoat responded and argued that the judgment was void for lack of personal jurisdiction. The parties briefed the issues and submitted affidavits of Doyle Jefcoat and George Coon, the owner and managing member of AquaSeal.

¶8.     The county court ultimately held that Jefcoat did not have sufficient contacts with AquaSeal to be haled into an Ohio court. It set the default judgment aside and struck it from the circuit clerk's records.

¶9.     AquaSeal appealed to the circuit court, which affirmed the county court's judgment. AquaSeal now appeals to this Court.

**STANDARD OF REVIEW**

¶10.    The standard of review for questions of law, such as questions concerning personal jurisdiction of courts, is de novo. *Patriot Commercial Leasing Co. v. Jerry Enis Motors, Inc.*,

---

[3] The county court found that there was no dispute concerning the facts; the dispute arises over the characterization and application of these facts. We agree.

3

928 So. 2d 856, 860 (¶ 22) (Miss. 2006).

## DISCUSSION

¶11. Enrollment and enforcement of foreign judgments in Mississippi are governed by statute. Miss. Code Ann. §§ 11-7-301 to - 309. In *Davis v. Davis*, 558 So. 2d 814, 817 (Miss. 1990), the Mississippi Supreme Court held:

> This State is required by the United States Constitution, Art. IV, Sec. 1, to give full faith and credit to all final judgments of other states and federal courts *unless* (1) "the foreign judgment itself was obtained as a result of some false representation without which the judgment would not have been rendered[,]" *Reeves Royalty Co. Ltd. v. ANB Pump Truck Service*, 513 So. 2d 595, 598 (Miss. 1987), or (2) "the rendering court did not have jurisdiction over the parties or the subject matter." *Sollitt v. Robertson*, 544 So. 2d 1378 (Miss. 1989).

Lack of jurisdiction over the parties is a "primary limitation" that tempers application of full faith and credit of foreign judgments. *Sollitt*, 544 So. 2d at 1381.

¶12. To determine the jurisdiction and the validity of a foreign judgment, we must look to the law of the state that rendered the judgment. *Patriot Commercial Leasing*, 928 So. 2d 856, 862 (¶22) (Miss. 2006) (citing *Lambert v. Lawson*, 538 So. 2d 767, 769 (Miss. 1989)). The Ohio Supreme Court utilizes a two-step analysis in cases where personal jurisdiction is challenged, saying:

> When determining whether a state court has personal jurisdiction over a foreign corporation, the court is obligated to engage in a two-step analysis. First the court must determine whether the state's "long-arm" statute and the applicable civil rule confer personal jurisdiction, and if so, whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution.

4

*U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods Inc.*, 624 N.E.2d 1048, 1051 (Ohio 1994) (footnote omitted). Thus, the exercise of personal jurisdiction under Ohio law is valid only if it meets both the state's long-arm statute and constitutional due-process requirements. It is the plaintiff's burden to make a prima facie showing of jurisdiction, and the pleadings and affidavits must be considered in a light most favorable to the plaintiff. *James v. Hoffman*, 112 N.E.3d 447, 451-52 (Ohio Ct. App. 2d 2018).

## I. Ohio's Long-Arm Statute

¶13. Ohio's long-arm statute reads:

> [a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this state . . . .

Ohio Rev. Code Ann. § 2307.382(A)(1). Although there are other bases for personal jurisdiction, only subsection (A)(1) applies in this case. The threshold question to be determined is whether Jefcoat transacted any business in Ohio.

¶14. Ohio courts have consistently said that phrase "transacting any business" is given a broad interpretation. The word "transact" is broader than the term "contract" and encompasses in its meaning "to carry on business" and "to have dealings." *Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 1994). The determination of whether a nonresident defendant's activities amount to "transacting any business" in Ohio is made on a case-by-case basis, and whether a defendant has transacted any business in Ohio is determined on the particular facts of the case. *Sprint*, 624 N.E. 2d at 1052. This case by case analysis was

stressed in *Clark v. Connor*, 695 N.E.2d 751, 755 (Ohio 1998):

> Due to the breadth of the phrase transacting any business, questions concerning the applicability of [the long arm statute and rule] have been resolved on highly particularized fact situation, thus rending any generalization unwarranted." (internal quotations, citations, and alterations omitted).

¶15. AquaSeal acknowledges that Jefcoat had no physical presence in Ohio, but it argues that Jefcoat's initiating the contact, its wire transfer of a payment to AquaSeal's bank in Ohio, and its phone contacts and faxes constitute "transacting any business" and creates personal jurisdiction. AquaSeal relies on *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.*, 559 N.E. 2d 477 (Ohio 1990). In that case, Mitchell's, a Georgia corporation, leased a storeroom located in Kentucky from Kentucky Oaks Mall, an Ohio based limited partnership. *Id*. at 478. Negotiations were handled by phone, and the contract was signed by the parties in their respective states. *Id.* The ten-year lease created a long-term business relationship between the parties in which Mitchell's was required to submit monthly and annual sales reports to Kentucky Oaks and obtain approval from Kentucky Oaks which would regulate many of Mitchell's activities on the site. *Id.* Under such circumstances, the Ohio Supreme Court found Mitchell's had "transacted business" in the state and subjected itself to personal jurisdiction in Ohio. *Id*. at 480 (¶2).

¶16. While there may be similarities between *Kentucky Oaks* and the instant case, there are substantial differences that lead to a different result. In *Kentucky Oaks*, the parties entered into a ten-year lease agreement; here, the training contract was a single business transaction. In *Kentucky Oaks*, the nonresident defendant submitted maintenance costs, annual reports,

6

association fees, and sales reports to Kentucky Oaks in Ohio. *Id*. at 481-82. Jefcoat was not subject to such requirements. Kentucky Oaks also maintained some control over the retail sale and rental operation in Kentucky, and Mitchell's was required to obtain Kentucky Oaks' approval for many activities. *Id*. at 479. The relationship went further than a one-time purchase of services as in the case at hand. Here, Jefcoat did not establish the type of contacts warranting a finding that it had transacted business in Ohio under *Kentucky Oaks.*

¶17.    A more recent case examining the Ohio long-arm statute, *Soprema Inc. v. Beachside Roofing LLC*, No. 1:09cv558,  2010 WL 1132662 at *4 (N.D. Ohio 2010), involved more than a single breached agreement.  There, the district court found a nonresident company, Bodell, had transacted business in Ohio when it entered into a credit agreement with an Ohio company, Soprema; made multiple payments to Soprema; sent multiple purchase orders to Ohio for Soprema's roofing products; engaged in numerous discussions and negotiations; and where Soprema supervised, tested and warranted the repair work done with its products. Here, there was a single transaction, a single payment, and only training services provided by AquaSeal in Mississippi.

¶18.    The other Ohio cases cited by AquaSeal are also distinguishable from the case at hand. In *Cole v. Mileti*, 133 F. 3d 433 (¶3) (6th Cir. 1998), the Sixth Circuit, in applying Ohio's long-arm statute, found that Mileti, a non-resident, had transacted business in Ohio when he negotiated and agreed with Cole, an Ohio resident, for the transfer of stock in exchange for a promise to pay a bank loan that Cole owed. The parties had been business associates in the

7

past, and the agreement resulted from the failure of a prior film venture between them. *Id*. at 435. Cole had undertaken the bank loan to invest in the failed project. *Id.* Again, in the case before this Court, Jefcoat had no prior business dealings with AquaSeal and dealt with the Ohio entity on only one transaction.

¶19.    AquaSeal also cited *Schnippel Construction Inc. v. Kreps*, No. 17-01-16, 2002 WL 235443 (Ohio Ct. App. 3d 2002). There Schnippel, an Ohio entity, had been awarded a contract to remodel apartments in Indiana. *Id*. at *1. Kreps, an Indiana entity, subcontracted with Schnippel to do the heating and air conditioning work. *Id.* Like the defendant in *Kentucky Oaks*, Kreps was required to submit progress reports to Schnippel, indicating a contract of significant length with numerous interactions between the parties. *Id*. at *3. The Ohio Court of Appeals also pointed out that Kreps owed a duty of performance to Schnippel, the Ohio entity, when it found that Kreps had "transacted business" in Ohio. *Id*. at *4. Here, the Jefcoat/AquaSeal interaction was one contract for three training sessions and it was AquaSeal that owed Jefcoat a duty of performance.

¶20.    More recent decisions have discounted the significance of communications between the parties via mail and phone. In *Epic Communications Inc. v. Progressive Communications*, No. 1:07cv3243, 2008 WL 1930419 (N.D. Ohio 2008), Progressive, serving as a vendor of technology equipment to Georgia schools, contracted with Epic Communications, an Ohio corporation for consulting services on grants available to school districts for this equipment. The contract between the parties was the result of Progressive's

8

"reaching out" to Epic by phone. Communications between the parties consisted of phone conversations and mail. When Epic sued Progressive in federal district court in Ohio for unpaid invoices for services, Progressive challenged jurisdiction under Ohio's long arm statute and due process. The court stated that "a contract with an out-of-state resident, standing alone, is insufficient to establish minimum contacts," citing *Packaging Engineering v. Werzalts*, No. 3:07cv1651, 2008 U.S. Dist. LEXIS 19243, *8-*9 (N.D. Ohio 2008), where similar facts lead to a similar holding. The Court found that communications between the parties by phone and mail along with a contract were still not contacts significant enough to demonstrate that Progress was "carrying on" business in Ohio.

¶21. In the case at hand, it is undisputed that Jefcoat initiated the contact with AquaSeal through a request for a bid, but there is nothing in the contract itself identifying the forum for enforcement; Jefcoat never visited Ohio; it had no office there, and it merely negotiated a single contract with an Ohio entity via emails and phone communications. The provisions of the contract did not affect Ohio, but rather Mississippi where AquaSeal trained Jefcoat employees. *See Shaker Constr. Grp. LLC v Schilling*, No. 1:08cv278, 2008 WL 4346777 at *4 (S.D. Ohio 2008) (when negotiation between an Ohio party and nonresident parties pertained to a project in Mississippi, the terms of the agreement did not affect the state of Ohio).

¶22. Applying Ohio's long-arm statute and precedent thereunder to the facts of this case, we agree that Jefcoat did not transact any business in Ohio and personal jurisdiction was not

9

created under Ohio's long arm-statute.

## II.    Due Process Requirements

¶23.    Even if personal jurisdiction had attached under the Ohio long arm statute, it must still pass constitutional muster.  The Due Process Clause of the Fourteenth Amendment prevents an individual from being bound by judgment in a forum with which he has established no meaningful contacts, ties, or relations.  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 319 (1945). Due process mandates that a court exercise jurisdiction only if the defendant has sufficient minimum contacts with the state such that summoning the party to that state would not offend the "traditional notions of fair play and substantial justice." *Id.* at 316.  In formulating this rule, the Supreme Court emphasized that the analysis is not to be "mechanical or quantitative," but based rather upon the quality and nature of the activity.  *Id.* at 319.

¶24.    To determine whether a nonresident defendant has minimum contacts, the court focuses on the relationship among the defendant, the forum and the litigation.  *James v. Hoffman*, 112 N.E. 3d 447, 455 (Ohio Ct. App. 2d 2018).  A court should consider "the number of contacts, the nature and quality of the contacts, the source and connection between the cause of action and the contacts, the interest of the forum state, and the convenience of the parties." *Nat'l City Bank v. Yevu*, 178 Ohio App. 3d 382, 386 (¶16) (Ohio Ct. App. 8th 2008).

¶25.    AquaSeal argues that Jefcoat's initiating contact with Ohio is sufficient to meet due process requirements, citing *Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985).

10

But *Burger King* discusses this concept in the context of a corporation that delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state who are subsequently injured by them in the forum state. *Id*. at 471-72. If anything, this principle would more aptly apply to AquaSeal's putting its products and services out to be purchased in other states and those other states then obtaining jurisdiction over AquaSeal. This one factor does not satisfy the constitutional cornerstone, also set out in *Burger King*, that the defendant has purposely established "minimum contacts" in the forum state. The Supreme Court said:

> If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.

*Id*. at 478. The Court went on to cite other factors including prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing that must be evaluated to determine whether the defendant purposefully established minimum contacts. *Id*. at 479.

¶26. In *American Office Services Inc. v. Sircal Contracting Inc.*, No. 82977, 2003 WL 22672184 (Ohio Ct. App. 8th 2003), the Ohio Court faced facts similar to those in the present case and found that personal jurisdiction could not attach on due process grounds. There a Missouri corporation, Sircal, accepted a bid from American Office Services, an Ohio entity, to perform upholstery work as a subcontractor under a contract Sircal had with the University of Missouri. *Id*. at *1 (¶2). Payments would be made to American Office in Ohio. *Id.* All

11

contacts were made by telephone, facsimile, and mail. *Id.* Work was performed in Missouri. *Id.* When Sircal refused to complete payments, American Office sued in Ohio. *Id.* at *1 (¶3). After considering American Office's jurisdictional argument under the long-arm statute and *Kentucky Oaks Mall*, the Ohio Court of Appeals said:

> [E]ven if we found that Sircal transacted business under R.C. 2307.382, its contacts with Ohio are not sufficient to satisfy federal due process standards. That analysis requires a demonstration that Sircal's conduct in Ohio shows a deliberate intent to conduct business here and to take advantage of the "benefits and protections" of Ohio law, such that it can reasonably be expected to submit to jurisdiction in Ohio as well. Even if there is confusion about the scope of the phrase "transacting any business," whether a transaction is part of a continuing relationship is significant in due process analysis.

*Id.* at *2 (footnote omitted). The Court ultimately concluded that looking at the entirety of the Ohio contacts, Sircal could not have reasonably anticipated being subject to suit in Ohio. *Id.* at*3 (¶13).

¶27. We do not find that Jefcoat's connections to Ohio were so substantial that it could have reasonably anticipated being haled into an Ohio court, nor did they have sufficient contacts with Ohio to make the exercise of jurisdiction over them comport with traditional notions of fair play and substantial justice demanded by due process.

## CONCLUSION

¶28. Accordingly, we find that Ohio did not have personal jurisdiction over Jefcoat and affirm the circuit court's and county court's judgments.

¶29. **AFFIRMED.**

**GREENLEE, WESTBROOKS, TINDELL, LAWRENCE, McCARTY AND**

12

**C. WILSON, JJ., CONCUR. BARNES, C.J., AND J. WILSON, P.J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., NOT PARTICIPATING.**