[Cite as *Wiesenmayer v. Vaspory*, 2019-Ohio-1805.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

R.C. WIESENMAYER,             :
ADMINISTRATOR OF THE ESTATE   :
OF MARGARET S. EDWARDS, et al.   :    Appellate Case No. 27931
                                :
    Plaintiffs-Appellants         :    Trial Court Case No. 2016-MSC-
                                :    00402
v.                                 :
                                :    (Appeal from Common Pleas Court-
HELEN CATHERINE VASPORY, et al.  :    Probate Division)
                                :
    Defendants-Appellees        :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 10th day of May, 2019.

. . . . . . . . . .

WILLIAM J. BROWNING, Atty. Reg. No. 0010856 and MARIBETH MELUCH, Atty. Reg. No. 0055903, 2 Miranova Place, Suite 700, Columbus, Ohio 43215
    Attorneys for Plaintiffs-Appellants R.C. Wiesenmayer, Administrator of the Estate of Margaret S. Edwards, and Brookhaven Nursing and Rehabilitation Center

CHARLES F. GEIDNER, Atty. Reg. No. 0023889, and BRENT E. RAMBO, Atty. Reg. No. 0076969, 15 West Fourth Street, Suite 250, Dayton, Ohio 45402
    Attorneys for Defendant-Appellee State of Ohio, Department of Medicaid

MIRIAM SHELINE, Atty. Reg. No. 0018333, 7162 Reading Road, Suite 1150, Cincinnati, Ohio 45237
    Attorney for Amicus Curiae Pro Seniors, Inc.

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Plaintiffs-appellants Brookhaven Nursing and Rehabilitation Center and R.C. Wiesenmayer, Administrator of the Estate of Margaret S. Edwards, appeal from a judgment of the Montgomery County Probate Court entered on February 6, 2018. In its judgment, the probate court held that the Ohio Department of Medicaid had a valid, statutory lien on real property owned by the decedent before she died, and it determined on that basis that the claim against her estate represented by the lien should be paid prior to Brookhaven Nursing and Rehabilitation Center's claim against the estate. We find that the probate court correctly applied the law, and therefore, its judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} Margaret S. Edwards moved into Brookhaven Nursing and Rehabilitation Center ("BNRC") on October 15, 2014, and resided there until her death on January 3, 2016. She did not leave a will, nor was she survived by a spouse or any children. Her estate included a parcel of real property in Harrison Township.

{¶ 3} Edwards received Medicaid benefits during the last five months of her residency at BNRC.[1] On May 19, 2016, the Ohio Department of Medicaid ("ODM") therefore recorded a lien against Edwards's real property in Harrison Township pursuant to R.C. 5162.21, the statutory mandate for Ohio's Medicaid Estate Recovery Program. The lien document stated that ODM sought to recover $26,773.84 in benefits paid on

---

[1] Specifically, Edwards received benefits from August 1, 2015, through January 3, 2016. Appellants' Brief 2; Appellee's Brief 1. Appellants indicate that Edwards had also received benefits from October 14, 2014, through November 12, 2014. Appellants' Brief 2.

behalf of Edwards, plus statutory interest.

{¶ 4} In an order entered on June 29, 2016, the probate court appointed Wiesenmayer to act as special administrator of Edwards's estate; on the same date, BNRC presented a claim against the estate in the amount of $40,750.96. *See* R.C. 2113.15 and 2113.17. Effective September 6, 2016, the court appointed Wiesenmayer to act as full administrator, and one day later, ODM presented a claim against the estate in the amount of $27,018.32.[2]

{¶ 5} On November 2, 2016, Wiesenmayer initiated a civil action under R.C. 2127.02 to obtain authority to sell Edwards's real property in Harrison Township, alleging by implication that the personal property included in her estate would be insufficient to cover her remaining debts.[3] *See* Complaint for Authority to Sell Decedent's Real Estate to Pay Debts ¶ 2-11 and 16-19, Nov. 2, 2016. The probate court authorized the sale of the real property in an order entered on March 2, 2017.

{¶ 6} On August 10, 2017, the probate court docketed a judgment entry in which it confirmed the sale of the real property; ordered that ODM's "lien [be] cancelled" to "facilitate the transfer" of the property; and held that the interest formerly represented by the lien would attach to "the proceeds of [the] sale [of the property] with the same priority" as the lien would have had. Judgment Entry Confirming Sale 1-3, Aug. 10, 2017. The court, however, deferred a decision regarding the priority of ODM's interest until it could

---

[2] The amount of the claim apparently represents the amount of lien, plus interest.

[3] In its judgment entry, the probate court incorrectly states that Wiesenmayer filed the complaint on November 20, 2016, instead of November 2, 2016. Judgment Entry Overruling Objections and Adopting Magistrate's Decision 10-11, Feb. 6, 2018

determine whether the interest should be deemed an unsecured debt subject to the provisions of R.C. 2117.25(A), or a secured debt subject to the provisions of R.C. 2127.18 and 2127.38.

{¶ 7} A magistrate thereafter issued a decision on September 25, 2017, recommending that the probate court treat ODM's claim as "a valid lien that must be satisfied from the proceeds of [the] sale" of the real property before any other remaining claims, "including the claim filed by [BNRC]." Magistrate's Decision 13, Sept. 25, 2017. The probate court adopted the recommendation in its judgment entry of February 6, 2018, and Appellants timely filed their notice of appeal to this court on March 6, 2018.

## II. Analysis

{¶ 8} In their single assignment of error, Appellants contend that:

THE PROBATE COURT ERRED IN OVERRULING OBJECTIONS AND ADOPTING MAGISTRATE'S DECISION AND ORDERING THAT THE STATE OF OHIO, DEPARTMENT OF MEDICAID HAS A VALID LIEN THAT MUST BE SATISFIED FROM THE PROCEEDS OF SALE HELD BY THE ADMINISTRATOR BEFORE ANY REMAINING PROCEEDS OF SALE ARE DISTRIBUTED TO THE ADMINISTRATOR TO APPLY ON [sic] THE CLAIMS IN THE DECEDENT'S ESTATE INCLUDING THE CLAIM FILED BY BROOKHAVEN NURSING AND REHABILITATION CENTER.

{¶ 9} Appellants argue that ODM never perfected its lien against Edwards's real property because it did not record the lien before Edwards died. Appellants' Brief 13-14. Additionally, Appellants argue that the priority of ODM's claim should be determined pursuant to R.C. 2117.25(A) and 2127.38, which they describe as "plainly and

unambiguously provid[ing] that nursing home claims have priority over Medicaid claims," and that ODM violated Edwards's right to due process by recording the lien after she died because she could no longer be served with notice. *See id.* at 8-15.

{¶ 10} Appellants challenge only the probate court's construction and application of the law. As a result, we review the probate court's judgment de novo. *See, e.g., James v. Hoffman*, 2018-Ohio-2422, 112 N.E.3d 447, ¶ 7 (2d Dist.); *Howard v. HCR ManorCare, Inc.*, 2018-Ohio-1053, 99 N.E.3d 429, ¶ 23 (2d Dist.).

{¶ 11} R.C. 5162.21(B)(1) requires, to "the extent permitted by federal law," that "the department of medicaid * * * institute a medicaid estate recovery program under which the department shall, except as provided in [R.C. 5162.21(C) and (E)], and subject to [R.C. 5162.21(D)]," seek "adjustment or recovery" for "the costs of medicaid services" that the department "correctly paid or will pay on behalf of a permanently institutionalized [person] of any age." Recovery of such payments may be had "from the [person]'s estate" or from "the sale of property of the [person] or [the person's] spouse that is subject to a lien imposed under [R.C.] 5162.211." *Id.* The equivalent federal statute requires that a state department of Medicaid seek recovery of the costs of "medical assistance correctly paid" on behalf of "an inpatient in a nursing facility" who "cannot reasonably be expected to be discharged"; the department may recover its costs from the person's "estate or [from the proceeds of the] sale of * * * property subject to a lien imposed on account of [the] medical assistance paid [on the person's] behalf." 42 U.S.C. 1396p(a)(1)(B) and (b)(1)(A)-(B).

{¶ 12} According to R.C. 5162.211(A), "[e]xcept as provided in [R.C. 5162.211](B) * * * and [R.C.] 5162.23 * * *, no lien may be imposed against" a person's property "before

the [person]'s death on account of <u>medicaid services correctly paid or to be paid</u> on the [person]'s behalf."  (Emphasis added.)   One of these exceptions, R.C. 5162.211(B), authorizes "the department of medicaid [to] impose a lien against the real property of a medicaid recipient who is * * * permanently institutionalized" for the recovery of the costs of "<u>medicaid paid or to be paid</u> on the recipient's behalf," and the other exception, R.C. 5162.23, directs the "medicaid director [to] adopt rules under [R.C.] 5162.02 * * * permitting county departments of job and family services to take action to recover <u>benefits incorrectly paid</u> on behalf of medicaid recipients."[4]   (Emphasis added.)

{¶ 13} We construe R.C. 5162.21(A)-(B) and 5162.211(A)-(C) as authorizing ODM to record a lien against the real property of a permanently institutionalized Medicaid recipient after the recipient's death.   The term "estate" is defined for purposes of R.C. 5162.21 and 5162.211 as "[a]ll real and personal property and other assets to be administered under [R.C. Title 21]," as well as "property that would be administered under that title if not for [R.C.] 2113.03 or 2113.031," and "[a]ny other real and personal property and other assets in which" a Medicaid recipient "had any legal title or interest at the time of death (to the extent of the [recipient's] interest), including assets conveyed to a survivor, heir, or assign of the [recipient] through joint tenancy, tenancy in common, survivorship,

---

[4] Along with the recipient's real property, R.C. 5162.211(B) allows for a lien against the real property of the recipient's spouse, and against real property held jointly by the recipient and the recipient's spouse.   The authorization granted in R.C. 5162.211(B) is circumscribed by the provisions of R.C. 5162.211(C), pursuant to which "[n]o lien may be imposed * * * against the home of a medicaid recipient" if "any of the following lawfully resides in the home: (1) [t]he recipient's spouse; (2) [t]he recipient's son or daughter who is under [21] years of age or, under [42 U.S.C. 1614], [is] considered to be blind or disabled; [or] (3) [t]he recipient's sibling who has an equity interest in the home and resided in the home for at least one year immediately before" the recipient became permanently institutionalized.

life estate, living trust, or other arrangement." R.C. 5162.21(A)(1). Thus, by definition, the estate recovery program contemplates the recovery of Medicaid costs from the assets of deceased recipients. Although R.C. 5162.211(A) provides a grant of authority to ODM for the imposition of liens against the property of living, permanently institutionalized Medicaid recipients—subject to the conditions listed in R.C. 5162.211(B) and (C)—this grant of authority is presented as an exception to the principle that "no lien may be imposed against the property of [a Medicaid recipient] before the [recipient]'s death." Yet, the restrictive clause, "before the [recipient]'s death," would be meaningless—or, at best, superfluous—were ODM generally prohibited from imposing liens against the property of deceased recipients.[5]

{¶ 14} The Ohio Administrative Code confirms as much in its rule "describ[ing] Ohio's medicaid estate recovery program and the undue hardship waiver request process." Ohio Adm.Code 5160:1-2-07(A). Pursuant to Ohio Adm.Code 5160:1-2-07(C)(1), the "Ohio attorney general * * * will seek recovery or adjustment, on behalf of [ODM], from the estates of * * * permanently institutionalized [medicaid recipients] of any age, in the amount of all medicaid benefits correctly paid[,] including managed care capitation payments," and Ohio Adm.Code 5160:1-2-07(D)(1) adds that "adjustment or recovery under [Ohio Adm.Code 5160:1-2-07(C)] may be sought only * * * [a]fter the death

---

[5] The dissent suggests that the "provisions of 42 C.F.R. 433.36(d), requiring notice to [a] Medicaid beneficiary regarding [the nature and] effect of a lien, [would] have no purpose if a lien could be placed on [a] permanently institutionalized person's property after [the person's] death." Despite our finding that a lien may be recorded against the property of a deceased beneficiary, we believe that the regulation has a purpose nonetheless—it applies in those cases in which a lien is recorded against the property of a living beneficiary.

of the [recipient]'s surviving spouse, if any."    *See also* Ohio Adm.Code 5160:1-2-07(D)(2) (prohibiting recovery when a recipient has a "surviving child who is either under [21,] or is blind or permanently and totally disabled").    The provisions of Ohio Adm.Code 5160:1-2-07(D)(1)-(2) would be unnecessary were the imposition of liens against the property of a Medicaid recipient permissible only during the recipient's life, nor could a living Medicaid recipient have a "surviving" spouse or a "surviving" child.    *Compare with* R.C. 5162.211(C)(1)-(2).

{¶ 15} Arguing that ODM lacks the authority to record a lien against the real property of a permanently institutionalized Medicaid recipient after the recipient's death, amicus curiae, Pro Seniors, Inc., contends that ODM's lien in this case "could not [have] attach[ed] to the real property [Edwards] owned prior to [her] death because, at the time the lien was filed, she no longer owned the property" by operation of common law.    Brief of Amicus Curiae 6.    The definition of "estate" established by R.C. 5162.21(A)(1), however, supersedes the common law definition and embraces property that would otherwise have transferred automatically at the moment of Edwards's death to any survivors, heirs and assigns.

{¶ 16} Observing that R.C. 5162.211(A) refers only to the imposition of a lien "before the [recipient]'s death," as opposed to the imposition of a lien "after the [recipient]'s death," Appellants and the amicus curiae argue further that ODM's lien against Edwards's real property in Harrison Township was invalid because a statutory lien "cannot be created by implication."    (Citation omitted.)    Brief of Amicus Curiae 7; *see also* Appellants' Brief 13.    Nevertheless, the combined provisions of R.C. 5162.211(A) and (D)-(E) expressly authorize ODM to use liens against property as a means of recovering

medicaid payments made on behalf of permanently institutionalized persons, delineate the procedure for recording such liens, and fix their duration.[6] Thus, the question presented in connection with ODM's lien against Edwards's property is not whether the lien was recorded pursuant to an implied, rather than an express, statutory grant of authority; instead, the question is whether ODM was required to record the lien while Edwards was still living. For all of the foregoing reasons, we conclude that R.C. 5162.211(B)(1) does not apply exclusively to living, permanently institutionalized recipients of Medicaid benefits, and consequently, that ODM was not required to record its lien against Edwards's property before she died.

{¶ 17} Irrespective of the lien's validity, Appellants and the amicus curiae posit that the probate court should have determined the priority of ODM's claim pursuant to R.C. 2117.25(A), under which BNRC's claim would have taken precedence. Appellants' Brief 4-8; Brief of Amicus Curiae 10-14. We find that R.C. 2127.18, 2127.19 and 2127.38 unambiguously support the probate court's judgment to the contrary.

{¶ 18} Although R.C. 2117.25(A) determines the sequence in which "[e]very executor or administrator shall [apply the assets of an estate to] pay the debts of the decedent," Wiesenmayer brought an action under R.C. 2127.02, thereby invoking the jurisdiction of the "probate court for [a grant of] authority to sell [Edwards's] real property." (Emphasis added.) The probate court, in adjudicating an action brought by an administrator "to obtain authority to sell [a decedent's] real property," is invested with the

---

[6] A lien imposed under R.C. 5162.211(B) "shall remain [an encumbrance on the attached property] until [the lien is] satisfied," or until the recipient is "discharge[d] from the institution and return[s] home." R.C. 5162.211(D)-(E).

discretion to "determine the equities among the parties and the priorities of lien of [any] lien holders on the real property, and [to] order a distribution of the money arising from the sale in accordance with its determination."   R.C. 2127.18.   Furthermore, the probate court "shall [then] make the necessary order for an entry of release and satisfaction of all mortgages and other liens upon the real property," with the exception of a mortgage "that is assumed by the purchaser."   (Emphasis added.)   R.C. 2127.19.   As a result of his commencement of an action under R.C. 2127.02, Wiesenmayer effectively removed Edwards's real property from the application of R.C. 2117.25(A) and transferred responsibility for the disposition of the proceeds of the sale to the probate court.

{¶ 19} Under R.C. 2127.38(A)-(B), the "sale price of real property sold following an action by an executor, administrator, or guardian shall [first] be applied and distributed * * * [t]o discharge the costs and expenses of the sale," which includes reasonable fees "for services performed by attorneys for the fiduciary in connection with the sale, and compensation, if any, to the fiduciary"; and second, to pay "taxes, interest, penalties, and assessments then due against the real property, and to the payment of mortgages and judgments against the ward or deceased person, according to their respective priorities of lien, so far as they operated as a lien on the real property of the deceased at the time of the sale * * *."   (Emphasis added.)   In "the case of an executor or administrator," R.C. 2127.38(C)(1) states that "the remaining proceeds of [the] sale shall be applied as follows: [first,] [t]o the payment of legacies with which the * * * property * * * was charged, if the action is to sell real property to pay legacies; [and] [second,] [t]o discharge the claims and debts of the estate in the order provided by law."   Notwithstanding that R.C. 2127.38(B) refers to "mortgages and judgments against the * * * deceased person," and not to

"Medicaid liens," we concur with the probate court's determination that the general language of R.C. 2127.38(B) must be construed to include Medicaid liens in light of the specific language of R.C. 2127.19. *See* Judgment Entry Overruling Objections and Adopting Magistrate's Decision 10-11, Feb. 6, 2018; *see also* Appellants' Brief 6-7.

{¶ 20} Finally, Appellants argue that ODM's imposition of the lien after Edwards's death violated her right to due process because she could no longer be served with notice of the lien. This argument has no merit; after Edwards died, her estate stood in her place. *See, e.g., Estate of Blandford v. A.O. Smith Corp.*, 8th Dist. Cuyahoga No. 103030, 2016-Ohio-2835, ¶ 3-4. Similarly, the amicus curiae argues that the filing of the lien violated the right of Edwards's heirs to due process, by denying them service of notice, and that it worked an unconstitutional taking of property. Brief of Amicus Curiae 14-19. R.C. 5162.211(D), however, establishes that Edwards's heirs were, as a matter of law, "charged with notice of the lien and the rights of the department of medicaid thereunder" upon the filing of the lien "in the office of the recorder." And although Edwards's property would, presumably, have passed to her heirs immediately upon her death under common law, the legislature's enactment of R.C. 5162.21(A), as we have noted, supersedes the common law, meaning that ODM's lien did not result in an unconstitutional taking of any property interest held by the heirs. *See Admr., State Medicaid Estate Recovery Program v. Miracle*, 2015-Ohio-1516, 31 N.E.3d 658, ¶ 14-16 (4th Dist.) (finding that a decedent's life estate in certain property was included in her medicaid estate, despite the common law principle that a life estate is extinguished when the holder of the life estate dies). For all of the foregoing reasons, we find that the probate court determined correctly that ODM's claim had priority over BNRC's claim. Appellants' assignment of error is

overruled.

### III. Conclusion

{¶ 21} We find that ODM recorded a valid, statutory lien against Edwards's real property in Harrison Township pursuant to R.C. 5162.21(B)(1) and 5162.211, and further, that ODM's claim was consequently entitled to priority over that of BNRC pursuant to R.C. 2127.18, 2127.19 and 2127.38.   Therefore, the probate court's judgment of February 6, 2018, is affirmed.

. . . . . . . . . . . .


HALL, J., concurs:

{¶ 22} I agree wholeheartedly with Judge Tucker's statutory and legal analysis in the majority opinion. I write separately to add that allowing Medicaid recovery from a decedent's previously sheltered real estate also makes practical, logical, and equitable sense.

{¶ 23} In general terms, in Ohio, one's home equity in a primary residence (up to $585,000 for 2019, and entirely while occupied by a recipient's spouse) is not counted, and does not have to be spent down, before the owner qualifies for Medicaid benefits for long-term custodial care. This is most likely the largest asset sheltered during life from the spend-down otherwise necessary for a nursing home resident to be eligible for Medicaid. Therefore, even though a nursing home resident may have a home as a substantial asset, he or she can still be eligible for federal and state assistance, in the form of Medicaid, for long-term custodial care. Conversely, a nursing home's obligation is a matter of contract to provide its valuable services in return for private payment from an

individual resident from whatever assets that resident chooses to spend. In addition, R.C. 5162.211(A) prohibits the government from placing a lien on an excluded primary residence unless that person is "permanently institutionalized." Accordingly, it makes practical and logical sense that Medicaid, which has been required to pay for an eligible recipient's nursing home care, though the recipient has a valuable asset, should be able to recover upon the recipient's death directly from that valuable asset, which had been shielded from spend-down.

{¶ 24} Equity too favors Medicaid in recovery directly from the shielded former primary residence. If a nursing home resident is eligible for Medicaid, the nursing home substantially benefits by payment from the government for care of the nursing home resident, perhaps for years, despite Medicaid's inability to access the value of the primary residence.[7]

{¶ 25} Finally, statutorily, Medicaid and nursing homes are otherwise treated differently. R.C. 5162.21(A)(1)(b) provides a broad definition of an "estate" for purposes of the Medicaid recovery program. "Estate" includes real property that transfers upon death "through joint tenancy, tenancy in common, survivorship, life estate, living trust, or other arrangement." That means Medicaid recovery has been granted greater rights of recovery from sheltered real estate that transfers outside of probate court because a nursing home does not have an opportunity to present a post-death estate-like claim against real property that transfers outside probate court. *See, e.g.*, *Phillips v. McCarthy,* 2016-Ohio-2994, 55 N.E.3d 20 (12th Dist.). This expansive view of Medicaid recovery

---

[7] I suspect many nursing homes would argue that they lose money on Medicaid residents, but they are regularly paid nonetheless.

cuts across traditional notions of real-estate transfer no more and no less than allowing a Medicaid lien after death. Furthermore, if a nursing home fails to present a claim to the appointed representative of an estate within six months, regardless of whether a representative actually has been appointed, the nursing home is forever barred from recovery against the estate or the real property included therein. R.C. 2117.06(C). The time for a Medicaid claim, on the other hand, as specifically provided in R.C. 2117.061, is the later of one year or 90 days after Medicaid receives the required statutory notice from the estate representative, commissioner, or applicant for release from administration. And if that representative fails to provide the statutorily required notice, the time for Medicaid to file its claim never begins to run. *In re Estate of Centorbi*, 129 Ohio St.3d 78, 2011-Ohio-2267, 950 N.E.2d 505, ¶ 24-25. Because Medicaid recovery has been provided with unique recovery provisions, it logically follows that a Medicaid lien on real estate, held in abeyance during life, can be filed after death.

FROELICH, J., dissents:

{¶ 26} Margaret Edwards received Medicaid benefits while receiving care at BNRC. Edwards was widowed and had no children. After she died, the ODM placed a lien on her residence to recover amounts that it correctly paid in Medicaid benefits on her behalf. The probate court determined that ODM had a valid statutory lien on Edwards's real property and that ODM was entitled to payment on its lien prior to payment of BNRC's claim against Edwards's estate.

{¶ 27} I would conclude that ODM's lien was not valid. In Ohio, liens on property generally must be perfected prior to the property owner's death. After the property

owner's death, unsecured debts are generally satisfied through claims against the person's estate. The federal and Ohio Medicaid statutes allow recovery of properly-paid Medicaid payments from the person's estate (which itself is broadly defined). The statutes do not expressly authorize post-death liens, and they permit pre-death liens only in limited circumstances. ODM could have placed a lien on Edwards's property prior to death, but did not. Under Ohio law, ODM could not place a valid post-death lien on Edward's property. Consequently, under the laws governing the order in which debts are paid from a decedent's estate, BNRC should have been paid prior to ODM.

### I. Relevant Probate Statutes

{¶ 28} This matter involves the interplay between (1) probate statutes governing the distribution of proceeds from the sale of a decedent's property and (2) probate statutes governing the order in which debts are to be paid from the estate.

{¶ 29} R.C. 2117.25(A) establishes the order in which debts and claims on an estate are to be paid. Of relevance, the expenses of the decedent's last continuous stay in a nursing home, residential facility, or hospital long-term care unit are to be paid from the estate *prior to* claims made under the Medicaid estate recovery program. R.C. 2117.25(A)(7) and (8).

{¶ 30} As soon as an executor or administrator ascertains that the decedent's personal property is insufficient to pay all the debts of the decedent, the executor or administrator must begin an action in the probate court for the sale of the decedent's real property. R.C. 2127.02; *see also* R.C. 2127.10 (requirements of complaint to sell real property). In such an action, all lienholders whose claims affect the real estate must be made parties-defendant. R.C. 2127.12. If the probate court is satisfied that all

necessary parties are properly before the court and that the request for sale ought to be granted, the court may determine the equities among the parties and the priorities of the liens, and order a distribution of the money resulting from the sale in accordance with its determination.   R.C. 2127.18.   In its order, the probate judge must make the necessary order for an entry of release and satisfaction of all mortgages and other liens upon the real property, except a mortgage that is assumed by the purchaser.   R.C. 2127.19.

{¶ 31} R.C. 2127.38 sets forth the order of distribution of proceeds of the sale, as follows:

(A) To discharge the costs and expenses of the sale * * *

(B) To the payment of taxes, interest, penalties, and assessments then due against the real property, and to the payment of mortgages and judgments against the * * * deceased person, according to their respective priorities of lien, so far as they operated as a lien on the real property of the deceased at the time of the sale, * * * that shall be apportioned and determined by the court, or on reference to a master, or otherwise;

(C)(1) In the case of an executor or administrator, the remaining proceeds of sale shall be applied as follows:

(a) To the payment of legacies with which the real property of the deceased was charged, if the action is to sell real property to pay legacies;

(b) To discharge the claims and debts of the estate in the order provided by law.

* * *

{¶ 32} ODM claims, and the trial court found, that it had a valid lien under R.C.

5162.211, which was subject to payment from the proceeds of the sale of Edwards's real property (R.C. 2127.38(B)) and not based on the statutory priority of debts and claims against the estate's assets (R.C. 2117.25(A)). In response, the administrator of Edwards's estate and BNRC assert that ODM was not authorized to file a lien on Edwards's property after her death.[8]

## II. Post-Death Liens in Ohio, Generally

{¶ 33} In general, a lien filed on real estate after the death of the debtor is not enforceable in Ohio. *See Dressler v. Bowling*, 24 Ohio St.3d 14, 492 N.E.2d 446 (1986); *Brandon v. Keaton*, 90 Ohio App.3d 542, 630 N.E.2d 17 (2d Dist.1993). In *Dressler*, the appellants obtained a judgment in Indiana against the debtor. While the debtor was alive, the appellants filed a certificate of the Indiana judgment in Ohio, but did not follow the proper procedures under Ohio law to create a lien on the debtor's property. After the debtor's death, the appellants sought to enforce the lien against the debtor's estate, claiming that the lien was valid and the judgment should be given full faith and credit. The Ohio Supreme Court held that the foreign lien was unenforceable and that appellants could not obtain a valid lien after the debtor's death. It explained, "It is well-settled that no lien is obtained by a certificate of judgment filed after the judgment debtor's death, since his real property descends to his heirs at the time of death." *Dressler* at 16.

{¶ 34} Following *Dressler*, we reached a similar conclusion in *Brandon*, in which judgment creditors brought an action against the executor of a judgment debtor's estate

---

[8] The administrator further asserts that, even if the lien were valid, it did not constitute a "judgment" under R.C. 2127.38(B) and, thus, was not entitled to be paid from the proceeds of the sale of Edwards's property. Because I conclude that ODM's lien was not valid, I will not address this issue.

to enforce an alleged lien.   We concluded, based on *Dressler*, that the plaintiffs did not have a judgment lien on the decedent's property when it was filed three days after the decedent's death.   We stated, "A decedent's estate is fixed at the time of his death, and a judgment alone is not a lien on the estate."   *Brandon* at 545.

{¶ 35} Accordingly, absent statutory authority to the contrary, in Ohio, liens must be placed on a debtor's property during the debtor's lifetime.

### III. Medicaid Lien Statute

{¶ 36} The federal Medicaid program provides funding to States that reimburse needy persons for the cost of medical care.   *See* Social Security Act, 42 U.S.C. 1396 et seq.   States who participate in the Medicaid program are required to seek recoupment of paid Medicaid benefits through an estate recovery process, consistent with 42 U.S.C. 1396p and 42 C.F.R. 433.36.[9]

{¶ 37} The Medicaid estate recovery program serves several purposes.   One purpose is "to prevent individuals from transferring their assets to survivors, heirs, or assigns, while at the same time benefiting from taxpayer funds intended to assist the poor."   *In re Estate of Peterson*, 157 Idaho 827, 833, 340 P.3d 1143, 1149 (2014).   The estate recovery program also "furthers the broad purpose of providing for the medical care of the needy; the greater amount recovered by the state allows the state to have more funds to provide future services."   *Belshe v. Hope,* 33 Cal.App.4th 161, 173, 38

---

[9] The federal Medicaid lien, adjustments, and recoveries statute, 42 U.S.C. 1396p, is generally known as an "anti-lien" provision.   *See, e.g., Giraldo v. Agency for Health Care Admin.*, 248 So.3d 53, 55 (Fla.2018) ("Significantly, the [federal Medicaid] Act contains a general anti-lien provision protecting Medicaid recipients by broadly prohibiting state Medicaid agencies from imposing liens against any of a recipient's property.").

Cal.Rptr.2d 917 (1995); *see also West Virginia v. U.S. Dept. of Health and Human Servs.*, 289 F.3d 281, 284 (4th Cir.2002). In addition, the program protects a surviving spouse from poverty, allowing him or her to use assets during his or her lifetime. *In re Estate of Gullberg*, 652 N.W.2d 709, 714 (Minn.App.2002).

{¶ 38} Ohio participates in the Medicaid program, and its Medicaid estate recovery program is codified in R.C. 5162.21 and R.C. 5162.211. Under R.C. 5162.21, ODM is required to seek "adjustment or recovery" of any Medicaid services that ODM "correctly paid or will pay on behalf of" a beneficiary. The method of recovery differs depending on whether the beneficiary is a permanently institutionalized individual.

{¶ 39} If the person is a permanently institutionalized individual of any age, recovery is authorized *"from the individual's estate or on the sale of property of the individual or spouse that is subject to a lien imposed under section 5162.211 of the Revised Code*[.]" (Emphasis added.) R.C. 5162.21(B)(1). For individuals aged 55 or older who are *not* permanently institutionalized, ODM can seek adjustment or recovery from the individual's estate only.[10] R.C. 5162.21(B)(2). ODM can also seek adjustment or recovery from the estate of other individuals as permitted by law. R.C. 5162.21(B)(3).

{¶ 40} By its terms, R.C. 5162.21(B) limits the use of liens to the property of beneficiaries who are permanently institutionalized individuals. Liens are not authorized – before death or after death – for other Medicaid beneficiaries or from third-parties; for those individuals, adjustment or recovery may be sought only by claims against their estates.

---

[10] The property that is included in the individual's estate for Medicaid recovery purposes is defined by R.C. 5162.21(A)(1). Ohio's definition is broad, encompassing assets outside of the probate estate.

{¶ 41} There appears to be no dispute that Edwards was a "permanently institutionalized individual" as defined by R.C. 5162.21(A)(3). Accordingly, Edwards's circumstances were governed by R.C. 5162.21(B)(1), which allows for liens. However, R.C. 5162.21(B)(1) expressly authorizes recovery from the individual's estate or "on the sale of property * * * that is subject to a lien *imposed under section 5162.211 of the Revised Code.*" (Emphasis added.) The question becomes whether Edwards's property was subject to a lien authorized by R.C. 5162.211 when the property was sold.

{¶ 42} R.C. 5162.211 governs liens against the property of Medicaid recipients. It provides, in its entirety:

> (A) Except as provided in division (B) of this section and section 5162.23 of the Revised Code [allowing a judgment lien for incorrectly paid benefits], no lien may be imposed against the property of an individual before the individual's death on account of medicaid services correctly paid or to be paid on the individual's behalf.

> (B) Except as provided in division (C) of this section, the department of medicaid may impose a lien against the real property of a medicaid recipient who is a permanently institutionalized individual and against the real property of the recipient's spouse, including any real property that is jointly held by the recipient and spouse. The lien may be imposed on account of medicaid paid or to be paid on the recipient's behalf.

> (C) No lien may be imposed under division (B) of this section against the home of a medicaid recipient if any of the following lawfully resides in the home:

(1) The recipient's spouse;

(2) The recipient's son or daughter who is under twenty-one years of age or, * * * considered to be blind or disabled;

(3) The recipient's sibling who has an equity interest in the home and resided in the home for at least one year immediately before the date of the recipient's admission to the institution.

(D) The medicaid director or a person designated by the director shall sign a certificate to effectuate a lien required to be imposed under this section. The county department of job and family services shall file for recording and indexing the certificate, or a certified copy, in the real estate mortgage records in the office of the county recorder in every county in which real property of the recipient or spouse is situated. From the time of filing the certificate in the office of the county recorder, the lien attaches to all real property of the recipient or spouse described in the certificate for all amounts for which adjustment or recovery may be made under section 5162.21 of the Revised Code and, except as provided in division (E) of this section, shall remain a lien until satisfied.

Upon filing the certificate in the office of the recorder, all persons are charged with notice of the lien and the rights of the department of medicaid thereunder.

The county recorder shall keep a record of every certificate filed showing its date, the time of filing, the name and residence of the recipient or spouse, and any release, waivers, or satisfaction of the lien.

The priority of the lien shall be established in accordance with state and federal law.

The department may waive the priority of its lien to provide for the costs of the last illness as determined by the department, administration, attorney fees, administrator fees, a sum for the payment of the costs of burial, which shall be computed by deducting from five hundred dollars whatever amount is available for the same purpose from all other sources, and a similar sum for the spouse of the decedent.

(E) A lien imposed with respect to a medicaid recipient under this section shall dissolve on the recipient's discharge from the institution and return home.

{¶ 43} Stated simply, R.C. 5162.211(A) prohibits pre-death liens, but R.C. 5162.211(B) provides an exception to the general prohibition for liens, allowing pre-death liens on the property of permanently institutionalized individuals and of that person's spouse. R.C. 5162.211(C) identifies circumstances when the exception to the prohibition does not apply, i.e., when liens are again prohibited; none of the circumstances identified in R.C. 5162.211(C) applied to Edwards.

{¶ 44} ODM focuses on the phrase in R.C. 5162.211(A) that liens are prohibited "before the individual's death" as support for the conclusion that post-death deaths are not prohibited. ODM, in essence, argues that R.C. 5162.211(A)'s verbiage is superfluous if post-death liens are prohibited, i.e., that there is no reason to specifically prohibit most pre-death liens if post-death liens were also prohibited.

{¶ 45} I disagree that R.C. 5162.211(A) can reasonably be interpreted as a general

authorization for post-death liens on the property of permanently institutionalized individuals. First, as discussed above, post-death liens of any kind generally are not allowed in Ohio. While pre-death liens are permitted under Ohio law, the Medicaid statute expressly disallows liens on account of properly-paid Medicaid service "before the individual's death," unless an exception to the prohibition applies. I do not read the language "before the individual's death," in this context, as authorization for post-death liens in Ohio.

{¶ 46} Second, R.C. 5162.21 makes clear that, for Medicaid beneficiaries who are not permanently institutionalized individuals or for third parties, recovery or adjustment is permitted from those individuals' *estates*; pre-death and post-death liens are not permitted with respect to those individuals. Accordingly, Ohio's Medicaid estate recovery statutes do not, as a whole, indicate that post-death liens are generally permitted.

{¶ 47} Third, the terms of R.C. 5162.211 address the imposition of pre-death liens; there is no additional language in R.C. 5162.211 that explains when post-death liens would be permitted, how they would be recorded, after what period of time they would need to be renewed, and the like.[11] As stated by the Ohio Supreme Court, "[t]he character, operation, and extent of a statutory lien must be ascertained from the statute creating and defining it. Such statute cannot be amended or extended by judicial

---

[11] In contrast, some states have enacted statutes that expressly provide for the filing of Medicaid liens after death. *See, e.g.*, Wy,Stat.Ann. 42-4-207(j) (authorizing the filing of a Medicaid lien "against the property of the estate * * * of a deceased recipient."); Idaho Code Ann. 56-218(6) (authorizing the filing of a notice of lien within 90 days of notice of death from the personal representative of the estate or 3 years after death, whichever is sooner); N.J.Stat.Ann. 30:4D-7.2(a)(1) (liens against the estate).

construction to meet a situation not provided for nor contemplated thereby. The remedy is legislative." *Mahoning Park Co. v. Warren Home Dev. Co.*, 109 Ohio St. 358, 142 N.E. 883 (1924), syllabus.

**{¶ 48}** Fourth, R.C. 5162.211(E) states that liens imposed with respect to a Medicaid recipient "under this section" will "dissolve on the recipient's discharge from the institution and return home." R.C. 5162.211(E) has no logical applicability to a post-death lien, implying that post-death liens are not authorized "under this section" even for permanently institutionalized Medicaid recipients.

**{¶ 49}** Fifth, the overall structure of the federal Medicaid estate recovery statute is generally "anti-lien." The federal Medicaid recovery statute requires states to seek recovery and adjustment from Medicaid beneficiaries' *estates*, which necessary occurs after death. The use of liens is optional, and "before the individual's death" reasonably clarifies the very limited circumstances when a lien against Medicaid beneficiaries' property is authorized – before death, and then only if the beneficiary is a permanently institutionalized individual and if certain exceptions do not exist.

**{¶ 50}** In addition, 42 C.F.R. 433.36(a) addresses "the conditions under which [a Medicaid] agency may impose a lien against a beneficiary's property, and when an agency may make an adjustment or recover funds in satisfaction of the claim against the individual's estate or real property." Under 42 C.F.R. 433.36(c), if a State chooses to impose a lien against an individual's real property, the State must provide that certain provisions, set forth in 42 C.F.R. 433.36(d)-(i), are met.

**{¶ 51}** Among the provisions in 42 C.F.R. 433.36(d)-(i),[12] the State is required to

---

[12] 42 C.F.R. 433.36(g), entitled "Lien provisions," is substantially similar to R.C. 5162.21

specify the process by which the State will determine that an institutionalized individual cannot reasonably be expected to be discharged from the medical institution and return home. The description of the process must include:

- the type of notice to be given the individual; the notice must explain what is meant by the term lien and that imposing a lien does not mean that the individual will lose ownership of the home.

- the process by which the individual will be given the opportunity for a hearing

- the hearing procedures

- by whom and on what basis the determination that the individual cannot reasonably be expected to be discharged from the institution will be made.

42 C.F.R. 433.36(d). The provisions of 42 C.F.R. 433.36(d), requiring notice to the Medicaid beneficiary regarding what a lien is and the effect of a lien, have no purpose if a lien could be placed on the permanently institutionalized person's property after death.

{¶ 52} In its appellate brief, ODM asserts that "logic dictates that in order for R.C. 5162.211's lien filing provision to be <u>fully</u> effective it must, of necessity, allow for the filing of post-mortem liens, inasmuch as the full amount of payments made on behalf of a deceased individual cannot be known or calculated until after that person's death." (Emphasis sic.) However, R.C. 5162.21(B)(1) permits ODM to seek adjustment or recovery for amounts it "correctly paid *or will pay*" on behalf of a permanently institutionalized individual from the individual's estate or on the sale of property subject to

---

regarding authorization for and restrictions on the pre-death placement of liens on the real property of permanently institutionalized individuals. 42 C.F.R. 433.36(h), addressing recoveries and adjustments, is similar to R.C. 5162.21(B), allowing recovery from the sale of property subject to a lien when the person is permanently institutionalized.

a lien under R.C. 5162.211. (Emphasis added.)

**{¶ 53}** In addition, R.C. 5162.211(D) states that the lien "attaches to all real property of the recipient or spouse described in the certificate *for all amounts for which adjustment or recovery may be made under section 5162.21 of the Revised Code.*" (Emphasis added.) R.C. 5162.211(D) clearly provides that the lien may include amounts paid after the lien is recorded. *Accord Ohio Dept. of Job & Family Servs. v. Tultz*, 152 Ohio App.3d 405, 2003-Ohio-1597, 787 N.E.2d 1262, ¶ 23 (9th Dist.) ("By providing that a lien filed by ODJFS includes amounts of aid paid after the filing of the lien, the statutory scheme relieves ODJFS from the impracticable necessity of filing a new lien every time a distribution of Medicaid assistance is made to a recipient."). ODM does not need to know the total amount that it will pay when it files its lien under R.C. 5162.211.

**{¶ 54}** Finally, ODM relies on cases from the Ninth and Twelfth Districts regarding whether post-death liens are permitted by Ohio's Medicaid estate recovery statute. Both involve prior versions of Ohio's Medicaid estate recovery statute.

**{¶ 55}** In *Tultz*, the Medicaid beneficiary died, and he was survived by his wife. After his wife died, the Ohio Department of Job and Family Services recorded a lien against the real property in her estate to recover the amount paid on the beneficiary's behalf. ODJFS also filed a claim against the wife's estate. The estate rejected its claim. ODJFS sued the estate, requesting judgment in the amount of the benefits paid; the estate counterclaimed, seeking a declaration that the lien was void. The estate argued that Ohio law allowed recovery of costs paid only after the lien was recorded, and the costs that ODJFS was attempting to recover through the lien were paid before the lien was filed.

{¶ 56} The Ninth District interpreted R.C. 5111.11 and R.C. 5111.111,[13] which, in 2002 (when the probate court action was filed), were the Medicaid estate recovery and lien statutes. The Ninth District determined that ODJFS was permitted to pursue recovery from property that had passed through the beneficiary's estate. The appellate court further concluded that the lien, which was placed after the property had passed into the surviving spouse's estate, was valid. The court reasoned:

> ODJFS may not pursue recovery until after the recipient and the recipient's spouse have died, and federal law restricts ODJFS's ability to file liens during the lifetime of the recipient. By definition and design, the "estate recovery program" established by R.C. 5111.11(B) authorizes ODJFS to pursue its claims against property in an estate after the death of the

---

[13] At that time, R.C. 5111.11(B) read:
(B) For the purpose of recovering the cost of services correctly paid under the medical assistance program to a recipient age fifty-five or older, the department of job and family services shall institute an estate recovery program against the property and estates of medical assistance recipients to recover medical assistance correctly paid on their behalf to the extent that federal law and regulations permit the implementation of such a program. The department shall seek to recover medical assistance correctly paid only after the recipient and the recipient's surviving spouse, if any, have died and only at a time when the recipient has no surviving child who is under age twenty-one or blind or permanently and totally disabled.

Former R.C. 5111.111 further provided:
[ODJFS] may place a lien against the property of a medical assistance recipient or recipient's spouse * * * that the department may recover as part of the program instituted under [R.C. 5111.11]. When medical assistance is paid on behalf of any person in circumstances under which federal law and regulations and this section permit the imposition of a lien, the director of [ODJFS] or a person designated by the director may sign a certificate to the effect. * * * From the time of filing the certificate in the office of the county recorder, the lien attaches to all real property of the recipient or spouse described therein for all amounts of aid which thereafter are paid, and shall remain a lien until satisfied.

recipient's surviving spouse. We decline to construe R.C. 5111.11 and 5111.111 to provide that a surviving spouse's death severs ODJFS's access to recoverable assets, when ODJFS may pursue recovery only after the death of the surviving spouse. The alternative, ODJFS has pointed out, is that ODJFS would have to file a lien on the property of every Medicaid recipient and/or the recipient's spouse during their lifetimes as a prerequisite to any estate recovery. We do not find R.C. 5111.11 and 5111.111 susceptible of such a construction, given the severe burden this would place on ODJFS and federal limitations on ODJFS's ability to file liens during the recipient's lifetime.

*Tultz* at ¶ 19.

{¶ 57} In general, Ohio's Medicaid estate recovery statutes from 2002 are significantly different from those in effect at the times involved in this case. While the recording of lien provisions in former R.C. 5111.111 are similar to those in R.C. 5162.211(D) (and thus I agree with the Ninth District that the statute still allows for a continuing lien), the provisions in former R.C. 5111.11 differ significantly from R.C 5162.21. Regardless, in finding the lien valid, the Ninth District did not distinguish between ODJFS's ability to seek recovery from the *estate* of the surviving spouse and ODJFS's ability to *file a lien* after the death of both the beneficiary and surviving spouse. The court correctly concluded that ODJFS could pursue its claims against the surviving spouse's estate, but it does not necessarily follow that ODJFS could also file a lien on the property after the spouse's death.

{¶ 58} The Twelfth District has also concluded that post-death liens are permitted,

citing R.C. 5162.211(A) and *Tultz*. *Phillips v. McCarthy*, 12th Dist. Preble No. CA2015-08-017, 2016-Ohio-2994. In *Phillips*, the decedent resided in a nursing home and received Medicaid benefits for approximately one year. Prior to his death, the decedent transferred his ownership interest in a farm to his daughters, retaining a life estate in one-third of the property. After his death, ODJFS filed a lien against the property, seeking repayment of the costs of his Medicaid benefits. The daughters sought to quiet title, and the trial court entered summary judgment in favor of ODJFS.

{¶ 59} Applying the 2009 version of the Medicaid estate recovery statute, the appellate court addressed two issues. First, the daughters raised whether decedent's life estate had been extinguished, such that ODJFS could not encumber it with a lien; this required an interpretation of the "time of death" provision of former R.C. 5111.11(A)(6). The court agreed with ODJFS and held:

> * * * [W]ithin the confines of Ohio's Medicaid Estate Recovery Program, a life estate interest held by a Medicaid recipient does not extinguish upon his or her death. Rather, for purposes of Medicaid recovery, a life estate interest endures post mortem and represents a quantifiable asset which the state may encumber by virtue of a properly filed lien. In the absence of a probate estate, the state may seek recovery of Medicaid benefits from third parties to whom qualifying assets have passed. Ohio Adm.Code 5101:1-38-10(E)(2)(a).
>
> Contrary to appellants' assertions, the Department is not typically authorized to encumber assets during a Medicaid recipient's lifetime. *Ohio Dept. of Job and Family Servs. v. Tultz*, 152 Ohio App.3d 405, 2003-Ohio-

1597, 787 N.E.2d 1262, ¶ 14 (9th Dist.). Absent certain exceptions not relevant here, the state must wait until the recipient dies to file a lien against property in pursuit of Medicaid recovery. R.C. 5111.111(A). *See also Tultz* at ¶ 13-14.

*Phillips* at ¶ 17-18.

{¶ 60} The 2009 version of R.C. 5111.111(A) (liens against property of Medicaid recipients) is substantially similar to R.C. 5162.211(A). While I agree with the Twelfth District's conclusion regarding whether the life estate was part of the "*estate*" for purposes of Medicaid estate recovery, I disagree with the appellate court's conclusion regarding post-death liens based on my analysis of the statutory language, as discussed above.

## IV. Conclusion

{¶ 61} For the foregoing reasons, I conclude that ODM did not have the statutory authority to impose a Medicaid lien on Edwards's real property after her death, and the trial court thus erred in concluding that ODM's lien was valid. In the absence of a valid lien, ODM's claim should have been addressed under the laws governing the order in which debts are paid from a decedent's estate, R.C. 2117.25(A). Under that statute, the Ohio legislature has determined that nursing homes should be paid before Medicaid estate recovery claims. Accordingly, I dissent.

. . . . . . . . . . . .

Copies mailed to:

William J. Browning
Maribeth Meluch
Robert Wiesenmayer
Miriam Sheline

Charles F. Geidner
Brent E. Rambo
Bradley C. Smith
Richard Hempfling
Helen C. Vaspory
Cach, LLC
Capital One Bank (USA) N.A.
Carolyn Rice, Montgomery County Treasurer
State of Ohio Department of Taxation
The United States of America
Hon. Alice O. McCollum